UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

MULTIBANK 2009-1 CML-ADC VENTURE, LLC,

    Plaintiff,

v.

JAIMEE YOSHIZAWA, *et al.*,

    Defendants.

Case No. 2:10-cv-00695-LDG (LRL)

**ORDER**

One of the defendants, The Village at Russell-Phase 1, LLC (Village), has filed counterclaims (#21) against the plaintiff, Multibank 2009-1 CML-ADC Venture, LLC (Multibank).[1]  Multibank moves to dismiss the counterclaims (#22).  Village opposes (#24). Having considered the arguments of the parties, the Court will grant the motion.

---

[1] Though only captioned as a counterclaim, the pleading also serves as a third-party complaint against the Federal Deposit Insurance Corporation, as Receiver for Silver State Bank (FDIC).  That is, although the FDIC is not a plaintiff in the suit against Village, Village's pleading names the FDIC as a "counterdefendant."  The present motion to dismiss, however, is brought only by Multibank.

Motion to Dismiss

Multibank's motion to dismiss, brought pursuant to Fed. R. Civ. P. 12(b)(6), challenges whether Village's counterclaim states "a claim upon which relief can be granted." In ruling upon this motion, the court is governed by the relaxed requirement of Rule 8(a)(2) that the complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." As summarized by the Supreme Court, a party must allege sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Nevertheless, while a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.,* at 555 (citations omitted). In deciding whether the factual allegations state a claim, the court accepts those allegations as true, as "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Further, the court "construe[s] the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F3.d 895, 900 (9th Cir. 2007).

However, bare, conclusory allegations, including legal allegations couched as factual, are not entitled to be assumed to be true. *Twombly*, 550 U.S. at 555. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal* 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.,* at 1950. Thus, this court considers the conclusory statements in a complaint pursuant to their factual context.

To be plausible on its face, a claim must be more than merely possible or conceivable. "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief." *Id.*, (citing Fed. R. Civ. Proc. 8(a)(2)). Rather, the factual allegations must push the claim "across the line from conceivable to plausible." *Twombly.* 550 U.S. at 570. Thus, allegations that are consistent with a claim, but that are more likely explained by lawful behavior, do not plausibly establish a claim. *Id.*, at 567.

Background

      In 2006, Village obtained a construction loan (the Loan) from Silver State Bank to fund the development of commercial buildings. Village executed a Promissory Note, as well as a Deed of Trust pledging property located at 9130 West Russell Road as security for the Loan. From October 2006 through May 2008, Silver State Bank timely disbursed funds for the construction of the commercial buildings.

      By May 2008, the buildings had been constructed to shell condition, and Village received a Certificate of Occupancy for the building located at 9130 West Russell Road. At that time, the remaining work involved leasing the property and completing tenant improvements for the individual leases. For much of the space in the buildings, Village had executed leases or exchanged letters of intent to lease.

      During the summer of 2008, news of Silver State Bank's imminent demise became well-known to Village and to the leasing community in general, depressing tenant and brokerage interest in the buildings. By early fall of 2008, all tenants (save one) that had signed leases had cancelled their leases.

      On September 5, 2008, the Nevada Financial Institutions Division closed Silver State Bank. The FDIC was named as Receiver. Pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. §§ 1821 *et seq.*, the FDIC succeeded Silver State Bank. The FDIC notified Village that it had assumed control

of Silver State Bank's assets.  The FDIC further notified Village the Note and Loan were now owned by the FDIC.

On September 10, 2008, Village was notified that the FDIC had approved a disbursement request that Village had submitted in July.  Although Village had requested $93,903.98, the FDIC approved only $28,698.44.

On September 16, 2008, the FDIC notified Village that it was "increasingly unlikely that the FDIC is going to continue to allow draws on the Village at Russell."  The FDIC also notified Village that it was looking to convert the construction loan to a permanent loan.

Village asserts that the FDIC constructively repudiated the Loan Documents.

In February 2010, Multibank acquired the Loan from the FDIC.  In August 2010, Multibank foreclosed on the property securing the Loan.

Breach of Contract

Multibank argues that, as Village alleged that the FDIC repudiated the Loan prior to Multibank's purchase of the Loan, and as the FDIC has the authority to repudiate loans pursuant to statute (specifically FIRREA), and as a borrower's only remedy pursuant to FIRREA for the FDIC's repudiation is a claim against the FDIC for "actual direct compensatory damages . . . determined as of the date of the appointment of the" FDIC as receiver, 12 U.S.C. §1821(e)(3), and as FIRREA prohibits other forms of relief for the acts of the FDIC as receiver, Village can only bring a claim against the FDIC and thus cannot bring a claim against Multibank for the FDIC's repudiation of the Loan.

Village responds that, as demonstrated in a Fourth Circuit decision and a District of Massachuset's decision, FIRREA does not preclude the remedy of "setoff" or "extinguishment of debt" against the FDIC or a third-party assignee for the FDIC's repudiation of a loan agreement.  Neither decision, however, supports a determination that Village can maintain a breach of contract claim against Multibank.

4

The Fourth Circuit's decision in *WRH Mortgage, Inc. v. S.A.S. Assocs.,* 214 F.3d 528 (4th Cir. 2000) is not only distinguishable, but supports a determination that Village cannot maintain its claim against Multibank.  First, the *WRH* lawsuit is irrelevant to the issue raised by Multibank in its motion: whether Village is limited by FIRREA to bringing a breach of contract claim against only the FDIC.  In *WRH*, the lawsuit was initiated by the FDIC, as receiver for the predecessor bank, against the borrower.  Following the sale of the underlying note from the FDIC to WRH, WRH was added as a plaintiff.  The Fourth Circuit never addressed whether the borrower could initiate a claim, or a counterclaim, against WRH.  Accordingly, *WRH* is simply irrelevant to the critical issue whether FIRREA precludes Village from stating a breach of contract claim against Multibank for the FDIC's repudiation.

Second, *WRH* does not even support Village's contention that the FDIC's repudiation discharges Village of its obligations to repay funds disbursed by Silver State Bank prior to the repudiation.  The loan at issue in *WRH* was part of a single integrated contract between the borrower and the bank that included a lease in which the bank leased its building from the borrower.  The agreement expressly provided that the borrower's obligation to repay the loan was conditioned upon the predecessor bank's faithful payment, as lessee, of rent to the borrower.  The receiver repudiated the lease and the borrower subsequently ceased making payments on the loan.  The Fourth Circuit rejected the argument that discharging the borrower's obligation to repay the loan would contravene FIRREA.  Rather, the court concluded that the borrower was relieved of its obligations under the integrated agreement because FIRREA does not "modify the common law rule to require the lessor to perform under the lease or under any repudiated contract of which the lease is an integral part."  That is, FIRREA did not establish a new rule requiring a lessor to continue to perform its obligations under a repudiated lease.  Thus, the consequence of the receiver's repudiation of the lease portion of the integrated agreement was to discharge the

borrower's loan obligations under the same agreement because, pursuant to the express terms of the agreement between the borrower and the predecessor bank, the borrower's continued performance of its loan obligations was conditioned upon the predecessor bank's continued performance of its lease obligations.

The common law rule that a lessor is not required to continue performing its obligations under a lease repudiated by the lessee is inapplicable. Village was not a lessor. Silver State Bank was not a lessee obligated to pay rent to Village. Village's obligation to make loan payments was not conditioned upon Silver State Bank's payment of rent.

Further, the more general common law rule that repudiation by one party of its duty to perform terminates the duty of the other party to perform is inapplicable. Village alleges and acknowledges that, until just before it was placed into receivership, Silver State performed its duty and disbursed funds under the loan. Village further alleges that the FDIC, as receiver, then repudiated its duty to make any further disbursements under the loan. Village has not, however, alleged or directed the Court's attention to any provision of its Agreement with Silver State Bank pursuant to which Village's obligation to repay disbursed funds is expressly conditioned upon the disbursement of the entire principal amount of the loan. Accordingly, *WRH* does not support Village's underlying premise that the FDIC's repudiation discharged Village from its obligation to repay those funds that were disbursed prior to the refusal to disburse the remaining, undisbursed portion of the principal loan amount.

Village's reliance on *Hackel v. FDIC*, 858 F.Supp. 289 (D.Mass. 1994) fails for similar reasons. As to the issue raised by Multibank–that FIRREA limits Village to bringing its suit against the FDIC–*Hackel* suggests only that Multibank is correct. In *Hackel*, the borrower brought its suit for declaratory judgment against the FDIC. Nothing in *Hackel* suggests that the borrower on a loan repudiated by the FDIC may pursue a claim against a

6

party that purchases the loan from the FDIC.  Further, the facts of *Hackel* also involved a bank that leased its building from its borrower, and pursuant to an integrated agreement between bank and borrower, the borrower's obligation to repay the loan under the loan portion of the agreement was expressly conditioned upon the bank's payment of rent under the lease portion of the agreement.  As such, the *Hackel* court's determination that the FDIC's repudiation of the lease discharged the borrower from its loan obligations does not support Village's underlying premise that the FDIC's refusal to disburse the remaining principal discharged Village of its obligation to repay disbursed funds.

In sum, as FIRREA precludes Village from bringing a claim against any party other than the FDIC arising from the FDIC's repudiation of the loan, Village cannot maintain its breach of contract claim against Multibank.

Wrongful Foreclosure and Declaratory Judgment

Multibank argues that these claims fail as a matter of law because, under FIRREA, Village's only remedy for the FDIC's repudiation is to recover from the FDIC actual direct compensatory damages.  *See* 12 U.S.C. 1821(e)(3).

As suggested by Village, Multibank's argument that Village cannot maintain these claims against Multibank is essentially the same as its argument that Village cannot maintain its breach of contract claim.  Village's contention, in which it again misplaces its reliance upon *WRH*, that the FDIC's repudiation–its refusal to disburse the remaining principal that Silver State Bank had not disbursed–discharged Village of its duty to repay disbursed funds, is again without merit.   Village has not alleged and has not directed the Court's attention to any provision of its Agreement with Silver State Bank that conditioned Village's repayment of disbursed funds upon the disbursement of the entire principal amount.  Thus, Village's contention that it can maintain these claims against Multibank

7

because the FDIC's repudiation discharged Village's obligation to repay the disbursed funds is without merit.

Accordingly,

THE COURT **ORDERS** that Multibank 2009-1 CML-ADC Venture, LLC.'s Motion to Dismiss Counterclaim (#22) is GRANTED.

THE COURT FURTHER **ORDERS** that Village at Russell-Phase 1, LLC's Counterclaim (#21) is DISMISSED as against Multibank 2009-1 CML-ADC Venture, LLC.

DATED this ____11____ day of August, 2011.

_____
Lloyd D. George
United States District Judge

8